# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

VERDA ALLEN,                                )
                                            )
       Plaintiff,                       )
                                            )
v.                                          )   Case No. CIV-15-773-HE
                                            )
CAROLYN W. COLVIN, Acting Commissioner      )
of Social Security Administration,          )
                                            )
       Defendant.                       )

## REPORT AND RECOMMENDATION

Plaintiff, Verda Allen, seeks judicial review of the Social Security Administration's denial of supplemental security income (SSI). This matter has been referred by Chief United States District Judge Joe Heaton for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the Commissioner's decision be affirmed.

## I.    Procedural Background

Plaintiff protectively filed her application for SSI on January 15, 2013 and alleged a disability onset date of December 27, 2012. The Social Security Administration (SSA) denied the application initially and on reconsideration. *See* Administrative Record (AR) [Doc. No. 10], 45, 56. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. AR 10-19. The Appeals Council denied Plaintiff's request for review. AR 1-3. Thus, the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## II. The ALJ's Decision Issued February 27, 2015

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (explaining five-step sequential evaluations process); *see also* 20 C.F.R. § 416.920. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the protective filing date of her application, January 15, 2013. AR 12. At step two, the ALJ determined that Plaintiff has the following severe impairments: diabetes mellitus; depression; an anxiety disorder; malignant neoplasm of the right breast, status post lumpectomy and axillary node dissection; and low back pain. *Id*. (citations omitted). At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12-14. Specifically, the ALJ considered Listings 1.04, 12.04, 12.06 and 13.10. *Id*.

The ALJ next determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), comprised as follows. The claimant can engage in no overhead reaching with the right upper extremity. The claimant can handle, grip, finger, and feel frequently. The claimant is limited to simple and detailed tasks and instructions. The claimant can have no public contact.

AR 14. At step four, the ALJ found that Plaintiff could not perform her past relevant work as a stage technician, grocery checker, hand packager, spot welder and telemarketer. AR 17. At step five the ALJ considered Plaintiff's age, education and work experience, and the testimony of the vocational expert (VE). The ALJ determined Plaintiff could perform other jobs including routing clerk, order caller and power screwdriver operator and that these jobs exist in significant numbers in the national economy. AR 18. The ALJ concluded, therefore, that Plaintiff was not disabled for purposes of the Social Security Act. AR 18, 19.

### III. Plaintiff's Claims

Plaintiff challenges the ALJ's finding at step three that she did not meet or equal Listing 13.10(A). Plaintiff claims the ALJ failed to properly review and develop the evidence at step three. Plaintiff also challenges the ALJ's RFC determination made as part of the step-four determination. Plaintiff contends the RFC is flawed because it does not include work-related limitations for all of the severe impairments the ALJ found to exist.

### IV. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

V.     **Analysis**

   A.     **The ALJ's Step-Three Determination that the Requirements of Listing 13.10(A) were not Satisfied is Supported by Substantial Evidence**

The record establishes that Plaintiff detected symptoms of breast cancer in December 2012 and was subsequently diagnosed with breast cancer. AR 297, 302-10, 341-43, 357-70, 394-97. In February 2013, Plaintiff underwent surgery for a "lumpectomy and axillary node dissection (sentinel node)." AR 372-73.

Thereafter, Plaintiff underwent additional treatment including chemotherapy and radiation. AR 375, 458-60, 560-61. The record reflects her last treatment was for radiation in October 2013. AR 560-61. When the ALJ issued his decision in February 2015, he found that Plaintiff's "treating doctor's notes show [Plaintiff] has responded well to treatment and there has been no recurrence." AR 15.

The ALJ considered whether Plaintiff's condition met the severity requirements of Listing 13.10. The ALJ determined that Plaintiff did not meet those requirements "due to the absence of evidence of locally advanced carcinoma, carcinoma with metastases, or recurrent carcinoma." AR 12.

Plaintiff focuses her claim on the ALJ's failure to conclude that she meets subpart A of Listing 13.10. Plaintiff concedes that neither subpart B nor C of Listing 13.10 is satisfied.[1]

---

[1] Listing 13.10 requires that a claimant establish either:

   A.     Locally advanced carcinoma (inflammatory carcinoma, tumor of any size with direct extension to the chest wall or skin, tumor of any size with metastases to the ipsilateral internal mammary nodes),

   OR

Plaintiff argues that the medical evidence is inconclusive as to whether she suffers from a "tumor of any size with metastases to the ipsilateral internal **mammary nodes**." *See* Plaintiff's Brief [Doc. No. 12] at p. 3 (emphasis in original). Plaintiff relies on a pathology report completed in February 2013. AR 353-55. The pathology report analyzes specimen recovered during a surgical procedure performed on February 1, 2013. AR 372-74. The surgical records identify the procedure as: "Right breast lumpectomy and *axillary node dissection* (sentinel node)." AR 372 (emphasis added).[2]

The pathology report identifies three slides examined by the pathologist. Included as part of the first slide is this diagnosis:

> 1. RIGHT BREAST (LUMPECTOMY SPECIMEN WITH AXILLARY TAIL)
>
> \* \* \*
>
> -NUMBER OF SENTINEL LYMPH NODES EXAMINED: ONE
> -TOTAL NUMBER OF LYMPH NODES EXAMINED: 13
> -NUMBER OF NODES WITH MACROMETASTASES: EIGHT
>
> \* \* \*

Included as part of the second slide is this diagnosis:

---

> B. Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases,
>
> OR
>
> C. Recurrent carcinoma, expect local recurrence that remits with antineoplastic therapy.

[2] The surgery was prompted, in part, by a "[n]uclear medicine lymphoscintigraphy" conducted on the same date which revealed "[a]ctivity . . . in the lower axilla consistent with sentinel node." AR 366. Results of other testing prior to the surgery similarly revealed "right axillary lymphadenopathy that is worrisome for metastic involvement." AR 365; *see also* AR 369 (mammogram showing "[e]nlarged lymph nodes . . . within the right axilla").

2. RIGHT BREAST SENTINEL LYMPH NODE
-LYMPH NODE WITHOUT SIGNIFICANT PATHOLOGIC CHANGES
-NEGATIVE FOR MALIGNANCY

AR 354-55. Plaintiff argues the following based on these diagnoses in the pathology report:

> While we know that 13 nodes were excised, and we know that 2 of them were sentinel nodes, we only know that one was found to be free of cancer. AR 355. What about the other sentinel node? Was it a mammary node as the listing requires? The Medical Evidence of Record (MER) is not clear on that point. Neither the op report, nor the path report, tell us the information we need to know to determine if a listing is met.

*See* Plaintiff's Brief at p. 3.

The Commissioner responds that "Plaintiff has not shown she satisfies Listing 13.10(A) because the evidence revealed only axillary node not *mammary* node, chest wall, or skin involvement . . . ." *See* Commissioner's Brief [Doc. No. 18] at pp. 9-10 (footnote omitted). The Commissioner rejects as speculative Plaintiff's argument that one of the sentinel nodes might have been a mammary node. *See id.* at p. 10. According to the Commissioner, "the surgical report specifies that the sentinel nodes were taken from Plaintiff's axilla area . . . ." *Id.* (*citing* AR 372, 373 and 366). The Commissioner further argues that even if the surgical report were unclear – a matter the Commissioner does not concede – Plaintiff bears the burden to affirmatively show the requirements of the Listing are satisfied and Plaintiff has not satisfied that burden. *Id.* at pp. 10-11.

The Court agrees with the Commissioner that Plaintiff offers nothing but speculation as to whether the lymph nodes – excised as part of a surgery identified as "axillary node dissection" – may have included mammary nodes. The medical record as a whole supports a finding that the excised nodes were taken from the axilla area and, therefore, were not mammary nodes.

Accordingly, the Court finds the ALJ's conclusion that Plaintiff did not meet Listing 13.10(A) is supported by substantial evidence.[3]

Plaintiff further argues that the ALJ had a duty to further develop the record based on the alleged possibility that one of the excised nodes may have been a mammary node. Plaintiff claims the ALJ should have recontacted her treating physician, Dr. Carey, "to determine what his records meant and which nodes he was referring to." *See* Plaintiff's Brief at p. 4. Plaintiff claims the SSA's Hearings, Appeals, and Litigation Law Manual (HALLEX) requires as much. In addition, Plaintiff argues that HALLEX required the ALJ to obtain the opinion of a medical expert (ME).

Plaintiff is correct that an ALJ must "fully and fairly develop the record as to material issues." *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993). But as the Commissioner correctly states, Plaintiff's arguments regarding the ALJ's duty to develop the record and further premised on various provisions of the HALLEX, are dependent on her related argument that the record is ambiguous with respect to whether the severity of her impairment qualified at the Listing level. *See* Commissioner's Brief at p. 11.[4] As set forth, the Court finds the record is not ambiguous. The ALJ's duty to develop the record is triggered only when there

---

[3] The Commissioner relies, in part, on citation to various medical journals indicating that mammary node biopsies are not routinely performed. *See* Commissioner's Brief at p. 10, n. 7. But the Court declines to rely on such extraneous matters that do not form the basis for the ALJ's decision so as to avoid an impermissible post-hoc justification for the ALJ's findings. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007).

[4] Under 20 C.F.R. § 416.920b(c), an ALJ may recontact a medical provider if there is "insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled." The regulation specifically states that an ALJ may recontact a treating physician or take other steps listed in the regulation, but the regulation does not impose a requirement on the ALJ to take any of the listed actions. *See id*.

7

is ambiguous evidence or when the record is inadequate for proper evaluation of evidence. *See Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (no need to further develop the record because sufficient information existed for the ALJ to make her disability determination). The Court cannot and will not create an ambiguity where none exists, and it may not substitute its judgment for the Commissioner's. *See generally Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Therefore, any further development of the record, as urged by Plaintiff, was not required.[5]

Two additional reasons support this conclusion. First, the Tenth Circuit has indicated that relief is available only for a *prejudicial* violation of the HALLEX provisions, *see Butterick v. Astrue*, 430 F. App'x 665, 668 (10th Cir. 2011), and Plaintiff has failed to demonstrate any such prejudicial violation. Second, Plaintiff was represented by counsel at the hearing before the ALJ and Plaintiff made no claim at that time that further development of the record was needed. To the contrary, Plaintiff's counsel represented that the record was complete. AR 24. Under these circumstances, Plaintiff's claim must fail. *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) ("Although the ALJ has the duty to develop the record, such a duty does not permit a

---

[5] The Court notes that of the HALLEX provisions cited, Plaintiff contends HALLEX 1-2-5-34 imposed a mandatory duty on the ALJ to obtain a medical expert opinion. But a review of that provision demonstrates that such a mandatory duty exists only when the ALJ is considering finding a claimant's impairments equal, rather than meet, a listing. Pursuant to SSR 96-6p, the ALJ was authorized to rely on the opinions of the state agency consultants as set forth in form SSA-831-C3, *see* AR 45, 56, and their signature to the form demonstrates the question of medical equivalence was considered. *See* SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996); *Dailey v. Colvin*, No. 1:14-cv-00294-SEB-TAB, 2015 WL 331859 at *2 n. 2 (S.D. Ind. Jan. 21, 2015) (unpublished op.) (discussing that form SSA-831-U5, as expressly referenced in SSR 96-6p, is identical to form SSA-831-C3). Here, there is no indication that the ALJ was considering finding Plaintiff's impairments equaled the listing or that medical evidence received may have changed the state agency consultants' findings. *See* SSR 96-6p, 1996 WL 374180 at *4. Therefore, the ALJ was not required to obtain a medical expert opinion.

claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation.").

Plaintiff further claims that the ALJ erred in giving "partial weight" to the opinions of the state agency consultants because both of the consultants found that Plaintiff's breast cancer was "stage unknown" when, in fact, the medical record establishes Plaintiff suffered from stage three breast cancer. *See* Plaintiff's Brief at pp. 5-6. She further claims the opinions were "stale" based on the same argument that the doctors incorrectly identified the breast cancer as "stage unknown. *Id*. at p. 7. As the Commissioner correctly contends, however, the consulting physicians' reference to Plaintiff's breast cancer as "stage unknown" was merely a recitation of Plaintiff's alleged basis for claiming disability, not a reference to any diagnosis. *See* Commissioner's Brief at p. 11. And the consulting physician's own notes in support of the denial of reconsideration demonstrate a full review of her medical records regarding the diagnosis and subsequent treatment for breast cancer. *See* AR 65. Plaintiff fails to explain what alleged error resulted from the consulting physicians' reference to Plaintiff's breast cancer as "stage unknown." Thus, any alleged claim of error on this basis should be denied.

Finally, Plaintiff claims error alleging that the ALJ "tacitly rejected the treating physician opinions because he never mentioned them in his opinion." *See* Plaintiff's Brief at p. 9. According to Plaintiff, these records reflect that she may meet the Listing for breast cancer. *See id*. Contrary to Plaintiff's assertion, the ALJ did address the medical records of the treating physicians. AR 15, 16-17. And as discussed previously, Plaintiff has failed to demonstrate the medical evidence of record supports a finding that the criteria of Listing 13.10(A) are satisfied. Plaintiff's attempt to recast the claim as a treating physician error is meritless.

### B. The ALJ's RFC Assessment is Supported by Substantial Evidence

As her second claim of error, Plaintiff contends the ALJ's RFC determination "is flawed because it does not contain work-related limitations for all of the severe impairments" and, therefore, violates the requirement of Social Security Ruling (SSR) 96-8p that nonexertional capacity be expressed in terms of work-related functions. *See* SSR 96-8p, 1996 WL 374184 at *6 (July 2, 1996). Plaintiff challenges the ALJ's RFC findings both as to physical and mental limitations. The Court separately addresses these challenges.

#### 1. Mental RFC Assessment

In support of her claim that the ALJ's mental RFC assessment is flawed, Plaintiff contends:

- The ALJ failed to include moderate impairments in (1) the ability to understand, remember and carry out detailed instructions; and (2) maintain concentration persistence or pace;

- The ALJ failed to include proper limitations related to her severe impairments of depression and anxiety disorder; and

- The ALJ failed to make accommodation for Plaintiff's two to three panic attacks per day.

*See* Plaintiff's Brief at pp. 10-11.[6]

The RFC includes the following mental limitations: "[t]he claimant is limited to simple and detailed tasks and instructions . . . [and] can have no public contact." AR 14. In making this finding, the ALJ stated that he was giving great weight to the state agency mental RFC

---

[6] As the Commissioner points out, Plaintiff does not challenge the ALJ's credibility findings and, therefore, has waived any error related thereto. *See* Commissioner's Brief at p. 13 n. 10 (*citing Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.")).

determinations that "the claimant could perform simple and some complex tasks and adapt to a work situation, but could not relate to the general public." *Id*. (*citing* Exhibits 2A and 4A).

Plaintiff argues that the ALJ impermissibly concluded that Plaintiff could perform detailed wok, in direct contravention of these findings. *See* Plaintiff's Brief at p. 11.[7] Plaintiff also claims the ALJ did not account for her moderate limitations in concentration, persistence and pace. Plaintiff does not cite any authority in support of these arguments. The Commissioner contends Plaintiff's claims of error are precluded by *Vigil v. Colvin*, 805 F.3d 1199 (10th Cir. 2015). The Court agrees and additionally finds the reasoning levels of the jobs identified by the VE correspond to Plaintiff's RFC.

In *Vigil*, the claimant challenged the ALJ's mental RFC similarly contending that the ALJ failed to adequately account for his moderate difficulties in concentration, persistence and pace. But the Tenth Circuit rejected the challenge, concluding that "[t]he ALJ took these difficulties into account in formulating [the claimant's] RFC by limiting the skill level of his work to work with an SVP one or two." *Id*. at 1203. The court recognized that "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations." *Id*. at 1204. But in *Vigil*, the ALJ's findings that the claimant had "normal ability to recall items on immediate recall, and an ability to spell words forward, as well as [a] finding of normal thought processes" was sufficient to support the conclusion that the claimant retained enough memory and concentration to perform simple tasks. *Id*. at 1203. Because "[u]nskilled work generally requires only the following: (1) understanding, remembering and carrying out

---

[7] Plaintiff erroneously states that the state agency consultants opined that she could perform *no* detailed work. *See* Plaintiff's Brief at p. 11. To the contrary, the consultants opined that Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions. AR 53, 66.

simple instructions; (2) making judgments that are commensurate with the functions of unskilled work – i.e., simple work-related decisions; (3) responding appropriately to supervision, co-workers and usual work situations; and (4) dealing with changes in a routine work setting," the court concluded that the limitation to unskilled work adequately accounted for the claimant's moderate limitations. *Id.* (citation, internal quotations and alterations omitted); *see also Baysinger v. Colvin*, No. 14-cv-02628-REB, 2016 WL 1170147 at *3 (D. Colo. Mar. 25, 2016) (unpublished op.) ("[A] limitation to unskilled work necessarily excludes jobs that involve complex or detailed instructions.").

In this case, the jobs identified by the VE in response to the ALJ's hypothetical incorporating Plaintiff's RFC, and then relied upon by the ALJ at step five, all limit Plaintiff to work performed at a skill level of SVP two. AR 18, 41-42. And, as in *Vigil*, the ALJ made findings in support of the limitation to unskilled work. *See, e.g.*, AR 13, 15 (addressing claimant's responses on the Adult Function Report indicating she had no limitations on memory, understanding and following instructions); *see also* AR 13 (opinions of state agency consultants including "no signs of mental confusion or diminished reality contact, full orientation, normal mentation, properly organized and integrated thought processes, appropriate thought content, average intellect, no deficit in communication and language skills, and the ability to accurately solve simple math problems, and good comprehension"). Moreover, the Dictionary of Occupational Titles (DOT) classifies the jobs identified by the ALJ in support of his step-five finding as having reasoning levels of one or two and, therefore, those jobs are not inconsistent

with the ALJ's RFC determination.[8] Accordingly, Plaintiff's claim of error on this ground lacks merit.

Plaintiff also claims – in wholly conclusory fashion – that the ALJ found severe mental impairments at step two (depression and anxiety) but failed to account for those limitations in making the RFC determination. But Plaintiff's statement that the ALJ "fail[ed] to include any limitation whatsoever in his RFC" is a patent misstatement of the record. *See* Plaintiff's Brief at p. 13. The ALJ's RFC determination clearly does include limitations resulting from her mental impairments. And Plaintiff does not identify any additional functional limitations supported by the record. *See, e.g.*, *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015) (rejecting the claimant's challenge to the RFC where claimant failed to cite evidence "specific in the medical records to support his alleged functional limitations" and the ALJ had determined that the claimant's "own assessment of his limitations lacked credibility").

Plaintiff also faults the ALJ's RFC assessment because it does not account for her two-to-three panic attacks each day. But again, Plaintiff cites no medical evidence of record to support a functional limitation related to the alleged panic attacks. Indeed, the only evidence cited by Plaintiff is her own hearing testimony. *See* Plaintiff's Brief at p. 10 (*citing* AR 39). And, as

---

[8] *See* DOT § 222.587-038 (Router Clerk) (reasoning level two); § 209.667-014 (Order Caller) (reasoning level two); and § 699.685-026 (Power Screwdriver Operator) (reasoning level one). A reasoning level of two requires an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and a reasoning level of one requires an individual to [a]pply commonsense understanding to carry out simple one-or two-step instructions." *See* Dictionary of Occupational Titles, Appendix C, Components of the Definition Trailer, 1991 WL 688702. The Tenth Circuit has recognized that a claimant's RFC for "simple and routine tasks" is consistent with a reasoning level of two. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Likewise, Plaintiff's RFC for "simple and detailed" tasks is consistent with these reasoning levels. Indeed, the ALJ expressly excluded complex tasks in his hypothetical question to the VE. AR 41-42. Moreover, the VE confirmed that her testimony was consistent with the DOT. AR 42.

13

noted, Plaintiff has not challenged the ALJ's credibility findings in this action. Accordingly, the Court concludes the ALJ had no duty to incorporate panic attack-related work restrictions into the RFC.

2.  **Physical RFC Assessment**

Plaintiff challenges the ALJ's RFC finding that Plaintiff "can engage in no overhead reaching with the right upper extremity" but can "handle grip, finger, and feel frequently." *See* Plaintiff's Brief at p. 14 (*citing* AR 15). According to Plaintiff, the ALJ failed to "identify what medical evidence supports such a finding." *Id*. But Plaintiff states no more and fails to demonstrate why this RFC finding constitutes reversible error.

Plaintiff's challenge should be rejected. The medical record supports the ALJ's RFC determination. In placing restrictions on Plaintiff's right upper extremity, the ALJ only gave partial weight to the opinions of the state agency consultants who determined that Plaintiff was capable of performing *a full range of light work exertionally*. *See* AR 14 (*citing* Exhibits 2A and 4A). The ALJ found "[s]ome restrictions on the right upper extremity are appropriate based on the medical evidence of record." *Id*. The ALJ also found that although Plaintiff "had reported non-functional use of right arm" the medical evidence of record seems to focus more on right shoulder/upper arm related to lumpectomy residuals." AR 15. Plaintiff fails to identify any record evidence to support a more stringent exertional restriction related to Plaintiff's lumpectomy or other physical impairments than that included in the RFC. Plaintiff states that she has "complained about [use of her dominant hand/arm] to every doctor she has been treated by." *See* Plaintiff's Brief at p. 14 (*citing* AR 375, 630). But the record evidence cited by Plaintiff fails to demonstrate any such complaints. Indeed the cited portions of the medical record indicate only complaints of back pain in July 2013, *see* AR 375, and right breast pain in

April 2014, *see* AR 630. As to the latter, the treatment notes state that her "pain is doing well" with medication. AR 630.[9]

Plaintiff also states "[a]nd what of Ms. Allen's nausea and vomiting from her chemotherapy and radiation?" *See* Plaintiff's Brief at p. 14. But this argument is not developed in any manner. On this ground alone it should be rejected. *See Murell v. Shalala*, 43 F.3d 1388, 1389 n. 2 (10th Cir. 1994) (a claimant must "frame and develop an issue" in a manner that is "sufficient to invoke appellate review"). Moreover, the record demonstrates Plaintiff was no longer receiving chemotherapy or radiation at the time of the ALJ's decision.

In similar conclusory fashion and without adequate development, Plaintiff references "diarrhea for five days in a row" and "fatigue" as physical impairments omitted from the ALJ's RFC determination. Plaintiff fails to demonstrate any functional limitations related to these conditions. Indeed, Plaintiff cites only a single page in the voluminous administrative record in support. *See* Plaintiff's Brief at p. 14 (*citing* AR 322). The one-time report of diarrhea occasioned by her chemotherapy treatment, fails to support a corresponding need for a functional limitation in the RFC.

Finally Plaintiff' references the fact that she was "on T[a]moxifen therapy for several months" as grounds for additional limitations in the RFC due to "fatigue." *See* Plaintiff's Brief at p. 15 (*citing* AR 637). But Plaintiff does not elucidate with any specificity what those limitations should have been or cite any evidence of record to support additional limitations. Again, Plaintiff's conclusory assertions are insufficient to warrant further discussion and are

---

[9] At the hearing, Plaintiff testified she had pain in her right breast with numbness in her side and arm. AR 28. At that time she was not taking any pain medication but was attempting to see a pain management doctor. AR 30.

otherwise not sufficiently supported by any evidence of record that would require a reversal of the Commissioner's decision.

In sum, Plaintiff's challenge to the ALJ's RFC determination (both as to mental and physical components) is based on erroneous legal grounds and otherwise without record support. Fundamentally, as the Commissioner points out, "no medical source opined that Plaintiff had limitations greater than the ALJ imposed." *See* Commissioner's Brief at p. 13 (*citing Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995)). Upon review the Court concludes the ALJ's decision is supported by substantial evidence and the correct legal standards were applied. For these reasons, Plaintiff's claims should be rejected.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by May 19, 2016. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the Chief District Judge in this matter.

ENTERED this 5th day of May, 2016.

BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE